OPINION
This matter presents a timely appeal from a decision rendered by the Columbiana County Common Pleas Court, Juvenile Division, finding defendant-appellant, Chris Grant, guilty of contributing to the delinquency of minors as defined in R.C. 2151.02, in violation of R.C. 2919.24 (A) (1)
In a criminal complaint filed on May 11, 1998, appellant was charged with contributing to the delinquency of minors. It was alleged that appellant traded a quantity of marijuana to minors in return for a .38 caliber handgun which one of the minors had stolen from a family member. On July 28, 1998, this matter proceeded to a bench trial.
On or about May 3, 1998, appellant came into possession of a handgun which was the property of Myron Youngblood's grandmother. At trial, plaintiff-appellee, State of Ohio, presented the testimony of three juveniles: Myron Youngblood (Youngblood), Justin Carter (Carter) and Adam Valentine (Valentine), along with the testimony of Patrol Officer Marsha Eisenhart (Officer Eisenhart) of the Wellsville Police Department. Appellee's sole piece of physical evidence was the .38 caliber handgun which appellant turned in to police officials. The alleged marijuana was never recovered. Appellant offered no witnesses or evidence at trial.
All three juveniles testified that Youngblood was in possession of a handgun which he brought to a mutual friend's house in an attempt to find someone to whom he could trade it for marijuana or money. Further, all four of appellee's witnesses agreed that Valentine called appellant to see if he would be interested in purchasing the handgun. (Tr. 4, 25, 33, 45). Youngblood and Carter testified that they went to appellant's house and traded the gun for a quantity of marijuana. (Tr. 7-8, 22). Finally, it is undisputed that appellant brought the gun to the police department after officers had visited his mother.
With regards to the remainder of the testimony presented by appellee's witnesses, there were inconsistencies concerning whether marijuana was smoked, how much was smoked and which minor had marijuana in his possession before and after the meeting with appellant. There was also conflicting testimony as to who actually made the deal and exchange with appellant.
First, Youngblood testified that his friends convinced him to steal his grandmother's handgun and trade or sell it for some marijuana. (Tr. 9). Youngblood was unaware of anyone who would want the handgun, so Valentine called appellant. (Tr. 4). Youngblood and his peers proceeded to smoke three or four marijuana joints which were allegedly provided by Scott Groves (Groves) and Valentine. (Tr. 12). Next, Youngblood walked with Carter to appellant's house where Carter allegedly traded the handgun for marijuana. (Tr. 7-8). Carter, in turn, handed Youngblood approximately one-half ounce of marijuana. (Tr. 14) Youngblood stated that after the deal, they immediately left appellant's house and met with friends to smoke an additional two or three marijuana blunts. (Tr. 14)
Carter testified that he met with Youngblood at a mutual friend's house. (Tr. 20). Contrary to Youngblood's testimony, Carter stated that no marijuana was smoked before the meeting with appellant. (Tr. 26). Carter also claimed that he handed the gun to appellant, but that appellant handed the marijuana, approximately one-eighth, directly to Youngblood. (Tr. 28-29). Carter explained that they immediately left appellant's house and thereafter smoked two marijuana joints. (Tr. 30)
Valentine testified that he met with Youngblood and Carter at a mutual friend's house. Valentine claimed that before Youngblood and Carter drove to appellant's house, they smoked one or two joints which were provided by Youngblood. (Tr. 37). Valentine testified that he called appellant and appellant told him that he did not want to get involved because the handgun was probably stolen. (Tr. 38). Valentine testified that when he ran into Youngblood and Carter after their meeting with appellant, they smoked more marijuana, but he was unsure of its origin because Youngblood had marijuana on his person before going to appellant's house. (Tr. 39-40)
Finally, Officer Eisenhart testified that she interviewed Justin Carter pertaining to this case. (Tr. 44) Carter informed her that he stayed downstairs in appellant's house, while Youngblood went upstairs with appellant to exchange the handgun for marijuana. (Tr. 44).
Appellant did not testify on his own behalf at the trial. However, in answering a court inquiry prior to sentencing, appellant stated that he was only doing a good deed by taking a handgun from minors. (Tr. 56). Appellant claimed that he induced the youths to give him the handgun based upon a promise of money at a future time. (Tr. 56) Further, appellant stated that after he discovered the handgun was stolen, his only intention was to give it to the police. (Tr. 56)
The trial court stated that even though some of the evidence offered was inconsistent, it was nonetheless sufficient from an evidentiary standpoint to find appellant guilty beyond a reasonable doubt. (Tr. 54). The trial court sentenced appellant to serve sixty days incarceration in the county jail. This appeal followed.
Appellant's sole assignment of error on appeal alleges:
 "THE TESTIMONY AND THE LACK OF PHYSICAL EVIDENCE WERE WHOLLY INSUFFICIENT TO SUPPORT A CONVICTION BEYOND A REASONABLE DOUBT."
Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the fact-finder or whether the evidence is legally sufficient as a matter of law to support a conviction. State v. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a conviction is a question of law.Thompkins, supra. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, supra, at 113.
Alternatively, in determining whether a conviction is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Thompkins, supra, at 387. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Thompkins, supra at 387. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. Thompkins, supra, at 390, (Cook, J., concurring). The State must first have presented sufficient evidence to support the conviction before a reviewing court can determine whether the State persuaded the fact-finder to convict.Thompkins, supra.
Although appellant's second assignment of error alleges that his conviction was not supported by the sufficiency of the evidence, appellant's argument focuses on the manifest weight of the evidence. Appellant refers to the contradictory nature of the testimony offered by appellee's witnesses in asserting that none of said witnesses were believable and the testimony presented weighed heavily against conviction. Appellant also maintains that because appellee failed to produce any illegal drugs as evidence, he should have been acquitted at trial.
Despite the inconsistencies in the testimony offered by appellee's witnesses, it is clear that appellant exchanged marijuana with the juveniles in question for a stolen handgun. Such witnesses presented consistent testimony with regards to the primary elements of the crime for which appellant was charged.
R.C. 2919.24 (A) (1) defines the relevant elements of the crime for which appellant was charged and provides that no person shall aid, abet, induce, cause, encourage or contribute to a child becoming a delinquent child as defined in R.C. 2151.02.
The conflicting testimony to which appellant refers did not concern the essential elements of the crime but rather, pertained to the credibility of the witnesses. Credibility of the witnesses is primarily within the province of the fact-finder. State v.DeHass (1967), 10 Ohio St.2d 230, 231. The trial court was in the best position to observe the demeanor, gestures and voice inflections of the witnesses. It was well within the purview of the trial court to believe the testimony presented by appellee's witnesses in relevant part.
The testimony pertaining to an exchange of marijuana for a handgun was not in dispute as all of appellee's witnesses who were privy to the transaction at issue testified that when appellant received the handgun, he provided the minors with a quantity of marijuana.
Given the testimony presented, and viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence upon which to base appellant's conviction as any rational trier-of-fact could have found appellant guilty of the essential elements of contributing to the delinquency of minors beyond a reasonable doubt. Furthermore, appellant's conviction was supported by the manifest weight of the evidence as the fact-finder did not clearly lose its way and create a manifest miscarriage of justice.
Appellant's sole assignment of error on appeal is found to be without merit.
The judgment of the trial court is affirmed.
Donofrio, J., Waite, J., concurs.
APPROVED:
 ______________________________ EDWARD A. COX, PRESIDING JUDGE